IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHEN D. RUBIN, JOHN SERAMUR, ELLIS ROSENZWEIG, MIKE RUBIN, WENDY RUBIN, MICHELLE SOBEL o/b/o WILLA SOBEL and LUCY SOBEL, MICHELLE SOBEL, PAUL BRENNER, JASON GORCHOW, GERALD LEVY, EDWARD LEVINE, LEVINE LIMITED PARTNERSHIP, DEC-ART DESIGNER INC. 401K P.S. PLAN f/b/o GERALD LEVY, THE EDWIN C. GLICKMAN TRUST, RICHARD KONST, JAMES COHN, IRVIN CAPLAN, JAMES RUBIN, JOYCE RUBIN, RONALD L. BOORSTEIN, MARGARET DESHON, RONALD NORINSKY, DAVID GORENSTEIN, Trustee of the David Gorenstein Trust, ADELE J. GORENSTEIN, Trustee of the Adele J. Gorenstein Trust, JBF ENTERPRISES, an Illinois General Partnership, HAN SARAH GLICKMAN, MICHAEL KEER and NADINE KEER, <br><br>    Plaintiffs, <br><br>    v. <br><br>HOWARD E. BEDFORD, CLIFFORD K. BOLEN, DAVID S. LIPSON, EDWARD P. DOLANSKI, ROBERT C. DOUGLAS II and DAVID ALLEN, <br><br>    Defendants. | No. 09 C 6152 <br><br> Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

Plaintiffs have sued defendants for their alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, breach of fiduciary duty and negligence. Defendants have filed a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss. For the

reasons set forth below, the Court grants the motion as to the RICO claims and declines to exercise supplemental jurisdiction over the state law claims.

**Facts**

Plaintiffs are the former owners of thirty percent of the stock of Vita Food Products, Inc. (Second Am. Compl. ¶¶ 1, 4.)

In 2006, Vita needed capital to stay in business, which it raised by borrowing from banks and selling stock to plaintiff Stephen Rubin ("Rubin"), Chairman of Vita's Board of Directors, plaintiff Seramur, a member of the Board, and defendant Bedford, who then became a Board member. (*Id.* ¶¶ 18-22.) Vita's 2006 losses were so great that it had to take a write down of goodwill on its financial reports. (*Id.* ¶¶ 23-24.)

In August 18, 2006, at Bedford's urging, the Vita Board replaced Rubin with defendant Bolen as Vita's President and CEO. Rubin, however, remained the company's largest stockholder and the Chairman of its Board. (*Id.* ¶¶ 26-28.)

In 2007, because of Vita's large bank debt, Rubin began looking for a buyer for the company. (*Id.* ¶ 28.) Rubin approached Trident Seafood Corporation, which said it would be willing to pay up to $25 million for Vita and assume its debt. (*Id.* ¶¶ 29-31.) When Rubin told Bedford about the offer, Bedford said he would not support any sale for less than $40 million plus the assumption of debt. (*Id.* ¶ 37.)

Subsequently, Bedford offered to invest $3 million in Vita, if Rubin gave him an irrevocable proxy to vote Rubin's stock and an option to buy 2,650,000 additional shares of Vita at $1.25 to $1.75 per share. (*Id.* ¶ 41.) Having no other alternative, Rubin agreed. (*Id.* ¶ 42.)

2

When the terms of Vita Directors Seramur, Glen Morris and Steven Rothstein expired, Bedford replaced them with defendants Lipson, Allen, Bolen and Dolanski. (*Id.* ¶ 46.)

Thereafter, Bedford lowered the market price of Vita stock by: (1) "reducing the publicly reported . . . operating profits by approximately $1 [million] in one year"; (2) "suppressing information of valuable co-packing rights which Vita was very near [to] obtaining"; and (3) "preventing information about favorable Vita developments" from being disseminated. (*Id.* ¶ 47.) As a result, defendants were able to buy Vita shares for less than $1.00 per share. (*Id.* ¶ 48.)

On May 31, 2008, Bedford replaced Rubin with Lipson as Board Chairman. (*Id.* ¶ 49.) Rubin, however, remained on the Board and continued to look for buyers for the company. (*Id.* ¶ 50.) Bedford rejected all of the proposals Rubin presented. (*Id.* ¶¶ 50-51.)

On November 24, 2008, Bedford mailed to Board Chairman Lipson an offer to buy the minority shareholders' stock at $.30 a share. (*Id.* ¶ 53.) On December 1, 2008, Bedford and Lipson formed a special committee of the Vita Board, composed of defendants Bolen, Lipson, Dolanski, Douglas and Allen, to consider Bedford's offer. (*Id.* ¶¶ 57-59.) On December 9, 2008, the committee rejected it. (*Id.* ¶ 65.)

On December 15, 2008, Bedford submitted a second offer, increasing the per share price to $1.00. (*Id.* ¶ 67.) On January 27, 2009, the special committee agreed to a purchase price of $1.05 per share. (*Id.* ¶ 74.) Thereafter, the Board unanimously approved the price and recommended it to the shareholders. (*Id.* ¶ 79.)

The transaction was structured as a merger of Vita into VFP, a company wholly-owned by MDB II, which is wholly-owned by Bedford. (*Id.* ¶ 88.) On February 27, 2009, Bedford, for himself, and Lipson, on behalf of Vita, executed the merger agreement. (*Id.* ¶ 78.)

After agreeing to and executing the merger agreement, the special committee set a two-week period "("shop period") to solicit competing offers. (*Id.* ¶ 82.) The committee did not solicit an offer from Trident or Ocean Bounty, both of which had previously expressed interest in acquiring Vita. (*Id.* ¶¶ 84-85.)

After the shop period expired, Trident learned that Vita was up for sale and reaffirmed its prior offer, subject to due diligence. (*Id.* ¶ 89.) Lipson gave Trident three days to complete its investigation and submit an offer. (*Id.* ¶ 93.) As Lipson expected, Trident told him it could not do so by the deadline. (*Id.* ¶ 94.)

Lipson received another offer for Vita that exceeded the share price offered by Bedford. (*Id.* ¶ 95.) But Bedford, exercising a right provided to him in the merger agreement, rejected the offer. (*Id.* ¶¶ 96-97.)

On March 23, 2009, Sutter Securities issued an opinion that the transaction was fair, based on its comparison of Vita to companies that were significantly different from it. (*Id.* ¶ 69; *id.*, Ex. 8, Letter to Special Committee from Matthews of 3/23/09.)

On March 31, 2009, Bolen publicly released an unaudited year-end financial statement for Vita that contained a baseless $1,934,000.00 write down of goodwill resulting in an operating loss of almost $1.5 million. (Second Am. Compl. ¶¶ 99, 103-04.) Financial statements for 2008 previously submitted to the Board and did not contain the write down. (*Id.* ¶ 100.)

Defendants scheduled a shareholders meeting to vote on the proposed merger for April 23, 2009, but they prevented Rubin, Seramur and other shareholders from voting. (*Id.* ¶¶ 87, 109, 111-13.) The shareholders approved the merger. (*Id.* ¶ 115.)

**Discussion**

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In Counts I-III of the second amended complaint, plaintiffs allege that defendants violated RICO by conspiring to and acquiring control of Vita and conducting its affairs through a pattern of racketeering activity. *See* 18 U.S.C. § 1962(b)-(d). Defendants argue that these claims are based on alleged securities fraud, conduct that cannot be the basis for a RICO claim. *See* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor . . . except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.").

Plaintiffs argue that the determination of whether the alleged scheme involved a sale of securities cannot be made on a motion to dismiss. But the case plaintiffs cite as support, *Jones v. Deutsche Bank AG*, No. C 04-05357 JW, 2005 WL 1683164 (N.D. Cal. July 19, 2005), is quite different from this one. The plaintiff in *Jones* alleged RICO claims based on the defendants' promotion of tax shelters that involved the sale of promissory notes. *Id.* at *2-3. Defendants argued that the promissory notes were securities, and thus, moved to dismiss the RICO claims. *Id.* at *3. Because promissory notes are not necessarily securities within the meaning of the securities laws, the court denied the motion pending further factual development. *Id.* (citing *Reves v. Ernst & Young*, 494 U.S. 56, 63 (1990)).

5

Unlike in *Jones*, no additional facts are required to determine that the stock at issue here is governed by the securities laws. *See Reves*, 494 U.S. at 62 (stating that "stock, in whatever context it is sold, should be treated as within the ambit of [those laws]"). Thus, *Jones* has no bearing on this case.

Defendants committed securities fraud if, "in connection with the purchase or sale of any security," they: (1) "employ[ed] any device, scheme, or artifice to defraud"; (2) "ma[d]e any untrue statement of a material fact or . . . [failed to] state a material fact necessary . . . to make the statements made . . . not misleading"; or (3) "engage[d] in any act, practice, or course of business which operates . . . as a fraud." 17 C.F.R. § 240.10b-5; *see* 15 U.S.C. § 78j(b) (making it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device" in violation of SEC rules). Plaintiffs say the "in connection with" element is lacking because the linchpin of the alleged scheme was the "sham" stockholder vote to approve the merger, which did not involve the sale or purchase of securities. The merger, however, was the vehicle through which the shareholders of Vita, including plaintiffs, sold their stock to Bedford. Thus, the vote was "in connection with" the sale of securities.

The remaining elements of a securities fraud claim are that defendants made a false statement of material fact or omitted a material fact, with scienter, and plaintiffs relied on the statement or omission and were damaged as a result. *Makor Issues & Rights, Ltd. v. Tellabs*, 437 F.3d 588, 595 (7th Cir. 2006), *vacated on other grounds*, 551 U.S. 308 (2007). Plaintiffs allege that defendants engaged in a scheme to buy plaintiffs' Vita stock at an artificially low price by: (1) publicly disseminating false financial reports via U.S. mail and wires (Second Am. Compl. ¶¶ 99-107); (2) using email to tell Board members not to disclose Bedford's offers to Vita's shareholders (*id.* ¶¶ 55-56, 60, 70); (3) using U.S. mail to transmit Bedford's inadequate $1.05 per share offer and Sutter Securities' letter opining that the offer was fair (*id.* ¶¶ 69, 74); (4) confirming by email that Vita would not publicly solicit other bids

6

(*id.* ¶ 72); and (5) proposing by email that the special committee's compensation be increased (*id.* ¶ 63). (*See id.* ¶¶ 122, 125.) Each of the first three alleged acts would support a securities fraud claim. *Makor Issues*, 437 F.3d at 595.

Standing alone, the last two alleged acts would not support such a claim. But as *Bald Eagle Area School District v. Keystone Financial, Inc.*, 189 F.3d 321 (3rd Cir. 1999) illustrates, those acts do not stand alone. The plaintiff *Bald Eagle* asserted RICO claims based on defendants' alleged operation of a Ponzi scheme involving the sale of securities. *Id.* at 324-26. Though not all of the alleged acts were independently actionable as securities fraud, the district court dismissed the RICO claims pursuant to the securities fraud exception. *Id.* at 327.

On appeal, plaintiff argued that the claims were viable because some of the underlying conduct did not constitute securities fraud. *Id.* at 329. The Third Circuit disagreed because the "other" alleged conduct "was so closely connected to and dependent upon conduct undertaken in connection with the purchase or sale of securities that it was actionable as securities fraud." *Id.* at 330; *see Jacoboni v. KPMG LLP*, 314 F. Supp. 2d 1172, 1179 (M.D. Fla. 2004) (rejecting magistrate judge's view that portions of a RICO claim based on predicate acts that were not independently actionable as securities fraud remained viable because all of the predicate acts "were committed as part of a single fraudulent scheme," and thus, "must be considered together for securities fraud purposes").

As in *Bald Eagle* and *Jacobini*, defendants in this case allegedly perpetrated a single scheme comprised of some acts that would be independently actionable as securities fraud and others that were so closely connected to them that, taken together, they are actionable as securities fraud. Plaintiffs' RICO claims must, therefore, be dismissed.

7

That leaves Counts IV and V, in which plaintiffs assert state law claims for breach of fiduciary duty and negligence. Having dismissed all of the federal claims in this suit, the Court declines to exercise supplemental jurisdiction over these claims. *See* 28 U.S.C. § 1367(c)(3).

## Conclusion

For the reasons set forth above, the Court grants defendants' motion to dismiss in part [doc. no. 25], dismisses the federal claims in Counts I-III with prejudice and declines to exercise supplemental jurisdiction over the state law claims in Counts IV and V, which are stricken without prejudice to refiling in state court. This case is terminated.

**SO ORDERED**                                **ENTER: July 19, 2010**

_____
**RONALD A. GUZMAN**
**United States District Judge**